```
Gleiston Porcinode Andrade, CDCR# AL-1965
California Institution for Men
P.O. Box 3100
Chino, CA. 91708
PLAINTIFF PROCEEDING IN
PROPRIA PERSONA
```

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLEISTON PORCINODE ANDRADE,<br><br>            Plaintiff,<br><br>vs.<br><br>RALPH DIAZ, CDCR Secretary; SCOTT KERNAN, Former CDCR Secretary; KATHLEEN ALLISON, CDCR Division Director of Adult Institutions; MONA HOUSTON, CIM Warden; DEAN BORDERS, Former CIM Warden, and C. CASTRO, CDCR Correctional Officer, individually and in their official capacities,<br><br>           Defendants. | Case No. 5:20-CV-00137-FMO-JC<br><br>COMPLAINT FOR DECLARATORY RELIEF, AN INJUNCTION, AND DAMAGES FOR VIOLATION OF CIVIL RIGHTS<br><br>[42 U.S.C. § 1983]<br><br>DEMAND FOR JURY TRIAL<br><br>[Fed. R. Civ. P. 38(a)] |

Through this verified complaint, Plaintiff Gleiston Porcinode Andrade alleges:

### INTRODUCTION

1. Plaintiff is a state prisoner serving an indeterminate life sentence for multiple sex crimes. Within the prison culture, sex offenders are, understandably, reviled by prison guards and inmates alike. Nevertheless, even convicted sex offenders like Plaintiff are entitled to certain rights regardless of the nature

of their offenses. This includes the right to be protected from assault and injury by other inmates. As Plaintiff will show, prison officials flagrantly violated that right, which resulted in Plaintiff being brutally attacked and subjected to lifelong injury.

2. When Plaintiff arrived in CDCR custody, he was placed in protective custody based on the nature of his commitment offenses which prison officials believed made him a target for assault in the general population. He was housed in Sensitive Needs Yard (SNY) facilities and remained there without incident.

3. In 2016, however, prison officials began eliminating SNY facilities at Levels I and II facilities and decided to make SNY and general population (GP) inmates house together. From the beginning, this policy resulted in brutal attacks and several deaths. Yet, CDCR officials continued implementing the policy.

4. In 2019, as a result of the policy, Plaintiff was forced to house with a GP inmate who threatened him with physical assault because of his commitment offenses. Prison officials ignored Plaintiff's requests to be rehoused in another cell in order to be separated from the inmate. The same inmate subsequently attacked Plaintiff so brutally that he required facial reconstructive surgery and still suffers complications from his injuries to this day. He was hospitalized for over 60 days in order to sufficiently recover from his injuries.

5. The inmate in question was not subjected to any form of disciplinary action for brutally attacking Plaintiff. He was recently released on parole.

///

2
Civil Rights Complaint
Pursuant to 42 U.S.C. § 1983

6. Prison officials were aware that convicted sex offenders like Plaintiff are at a substantial risk of being attacked by inmates in the general population. With this knowledge, they implemented policies whereby Plaintiff was housed with a general population inmate who did just that: attack him because of his commitment offense. Furthermore, prison officials failed to take action to separate Plaintiff from the inmate when he brought this issue to their attention. As a result, they are all liable under the Eighth Amendment for failing to protect him from assault. Through this action, Plaintiff seeks declaratory and injunctive relief as well as monetary damages.

## I.

## JURISDICTION AND VENUE

7. The events giving rise to this action occurred at the California Institution for Men (CIM) in Chino, California. Thus, pursuant to 28 U.S.C. § 1391(b)(2) venue is proper in the United States District Court, Central District of California.

8. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331. Plaintiff's claims for declaratory and injunctive relief are authorized under 28 U.S.C. §§ 2201 and 2202. Plaintiff's claims for damages are authorized by 28 U.S.C. § 1343(b)(4).

## II.

## PARTIES

9. Plaintiff Gleiston Porcinode Andrade (Plaintiff) is a state prisoner currently confined at CIM. He was housed at CIM when the events giving rise to this action occurred.

///

10. Defendant Ralph Diaz is the Secretary of the California Department of Corrections and Rehabilitation (CDCR). Pursuant to Cal. Penal Code § 5054, Diaz is responsible for the supervision, custody, and control of all state prisons. Diaz is also responsible for the care, custody, treatment, training, and employment of prisoners confined in state prisons. Diaz directly participated in the events giving rise to this action and is being sued individually and in his official capacity.

11. Defendant Scott Kernan is the former CDCR Secretary. He functioned in this capacity during all the times relevant to this action. Kernan acted in this capacity when he directly participated in the events giving rise to this action. He is being sued in his individual capacity.

12. Defendant Kathleen Allison is currently employed by CDCR as the Director of the Division of Adult Institutions. Pursuant to Penal Code § 5052, Allison is designated in writing by the CDCR Secretary as the person who oversees the Wardens of all CDCR prisons, including the California Institution for Men (CIM) where Plaintiff is currently housed. Allison is also empowered to implement policy and procedure for implementation at all CDCR adult prisons. Allison directly participated in the events giving rise to this action, and is being sued individually and in her official capacity.

13. Defendant Mona Houston is the Warden of CIM. In this capacity, she is responsible for the overall operation of CIM. Pursuant to Cal. Code Regs., tit. 15, § 3380, Houston is empowered to implement local institutional policies and procedure for CIM inmates and employees. Houston is being sued in her

Civil Rights Complaint
Pursuant to 42 U.S.C. § 1983

individual and official capacities.

14. Defendant Dean Borders is the former Warden of CIM. He directly participated in the events giving rise to this action and is being sued in his individual capacity.

15. Defendant C. Castro is employed by CDCR as a Correctional Officer. He directly participated in the events giving rise to this action and is being sued in his individual capacity.

## III.

## STATEMENT OF FACTS

### A. CDCR's Implementation of Sensitive Needs Yards (SNY)

16. On February 19, 2002, Larry Witek, then-acting Deputy Director of CDCR's Division of Adult Institutions, issued a memorandum titled "SENSITIVE NEEDS YARD PLACEMENT CONSIDERATIONS" in response to "staff's request for direction regarding making [SNY] placement decisions." The memorandum was intended to represent CDCR's "SNY housing philosophy."

17. The Witek memorandum outlines several groups of inmates deemed to be appropriate for SNY housing. Included are "known sex offenders" who "may experience safety issues that are significant statewide, limiting other housing options." The memorandum goes on to state: "Under no circumstances do we place an inmate in GP if we believe that his or her safety would be threatened by such housing."

### B. Plaintiff's Arrival in CDCR and SNY Placement

18. Plaintiff arrived in CDCR custody after being sentenced to an indeterminate term of 195 years to life for multiple counts of forcible rape and forcible oral copulation. On April 5, 2012, Plaintiff arrived at the North Kern State Prison Reception Center

and was placed on Facility D SNY due to his stated "safety concerns from all General Population due to his commitment offense." On April 23, 2012, Plaintiff was interviewed by a correctional counselor and recommended for SNY placement due to his commitment offense.

19. Plaintiff arrived at CIM in 2016 and was placed on Facility C which, at the time, was a designated SNY facility. Plaintiff successfully programmed with other SNY inmates without incident.

### C. CDCR's Implementation of Non-Designated Programming Facilities

20. In 2016, CDCR began implementing Non-Designated Programming Facilities (NDPF) in order to "afford offenders the opportunity to positively program at...lower level institutions." NDPF's are designed to house SNY and GP inmates together without regard to consideration of case factors and safety concerns.

21. Defendant Allison issued a memorandum on December 12, 2017, stating that CDCR plans to convert all Level I and II facilities to the NDPF model. Allison issued this memorandum with the express approval of Defendants Kernan and Diaz.

22. In every NDPF memorandum issued by Allison--with the express approval of Defendants Kernan and Diaz--it states that "[t]ransfers into a non-designated PF will not require a CDCR Form 128-B, General Chrono, waiving prior SNY designation or willingness to program." Furthermore, each memorandum states that all inmates who meet the criteria must be housed in NDPF's or else they will be subject to disciplinary action.

///
///

Civil Rights Complaint
Pursuant to 42 U.S.C. § 1983

23. On July 16, 2018, Defendant Kernan issued a memorandum titled "NON-DESIGNATED PROGRAMMING FACILITY EXPANSIONS FOR 2018/19" in which he announced that CIM Facility C (the facility where Plaintiff was housed) would be converted from SNY to NDPF in September of 2018.

24. In furtherance of Kernan's announcement, Defendant Borders issued CIM Operational Procedure #090, which is CIM's local procedure which outlines its implementation of NDPF's at the institution. Borders signed OP# 090 on October 22, 2018.

25. OP #090 requires that all inmates who arrive at CIM receive orientation about the nature and purpose of NDPF's at CIM. This includes informing inmates formerly housed in general population facilities that they would be housed with SNY inmates and were expected to safely house with such inmates.

26. Plaintiff is informed and believes that numerous incidents of violence occurred as a result of CDCR's implementation of NDPF's. For example, Plaintiff is informed and believes that several SNY inmates were killed in other institutions by GP inmates. Plaintiff is also informed and believes that SNY inmates at CIM were attacked by GP inmates as a result of NDPF policies.

27. Plaintiff is informed and believes that inmates in the general population are aware of SNY facilities and the reasons for their existence. Plaintiff is also informed and believes that SNY inmates are viewed with disdain by GP inmates and are often targeted for assault (or worse) by GP inmates who come into contact with them. CDCR is well aware that SNY inmates cannot safely house with GP inmates in most circumstances because of their unique case factors (i.e. gang dropouts, sex offenders).

### D. Prison Officials' Failure to Protect Plaintiff From Assault

28. After Plaintiff's facility was converted to an NDPF, Plaintiff was housed with inmate Treyontae Hogg, CDCR# BG-4599, in cell 229 of the Del Norte housing unit on Facility C.

29. Plaintiff is informed and believes that inmate Hogg was not designated as an SNY inmate before being transferred to CIM from the reception center at San Quentin State Prison. When Hogg arrived at CIM, he received NDPF orientation pursuant to CIM OP #090. In other words, Hogg was informed that he would be housed with SNY inmates like Plaintiff.

30. During Plaintiff's incarceration, he never kept any documents concerning his commitment offense or underlying case in his personal possession. Nor did he keep any documents detailing the reasons for his SNY placement. None of these documents were kept in cell 229 while he was housed with inmate Hogg.

31. While housed in cell 229, Plaintiff repeatedly overheard Hogg make statements like "I can't live with no fucking weirdos." The term "weirdo" is a derogatory statement that Plaintiff has frequently heard other inmates use when referring to SNY inmates or convicted sex offenders. Throughout the time that Plaintiff was housed in cell 229 with inmate Hogg, he refused Hogg's repeated requests for information about Plaintiff's commitment offense.

32. One day in March 2019, Hogg returned to the cell and immediately accosted Plaintiff, calling him a "fucking chomo", another derogatory term used by inmates to refer to convicted sex offenders. Hogg went on to tell Plaintiff, "you got to go. You better find another cell."

33. The same day in March 2019, Plaintiff spoke with Defendant Castro and informed him about Hogg's demand that Plaintiff move out of cell 229 because of Hogg's aversion to the nature of Plaintiff's commitment offense. Plaintiff told Castro that he did not know how Hogg received this information because Plaintiff did not keep paperwork in his cell. Castro replied with a smile, "people have a way of finding out what they want to know." Plaintiff asked Castro to move him out of the cell because of Hogg's aggressive demands. Castro replied, "find somewhere to go and I'll move you."

34. Plaintiff could not find another cell to move to because Hogg had told most of the Facility C inmates he knew that Plaintiff was a convicted sex offender.

35. In early April 2019, Hogg asked Plaintiff if he had found another cell to move to, and Plaintiff said no. Hogg then replied, "if you don't get your ass out of here, I'm going to beat your ass and rape you like you raped those girls."

36. The next day, Plaintiff went to Castro and told him that Hogg threatened him with violence and that he needed to be moved out of the cell. Castro replied, "that's not my problem. I told you to find somewhere to go. If you can't move anywhere, there's nothing I can do about it."

37. The next morning, Plaintiff woke up on the floor while being savagely punched and kicked in the face and midsection by Hogg. Plaintiff lost and regained consciousness twice during the attack, which ceased once staff arrived at the cell door.

///

///

Civil Rights Complaint
Pursuant to 42 U.S.C. § 1983

38. After the attack, Plaintiff was transported to an outside hospital where he underwent emergency reconstructive surgery to repair multiple facial fractures. Upon returning to CIM, he was placed in the Outpatient Housing Unit (OHU) for over three (3) weeks in order to continue recuperating from his injuries.

39. Plaintiff continues to experience pain and difficulty from the injuries he sustained after being attacked by Hogg. For example, he has little to no sensation in his facial area. He also has reduced vision in the eye affected by fractured orbital bone. He also has severe overbite, which may require additional reconstructive surgery, because he now frequently bites his tongue during meals. He also suffers daily headaches and dizziness.

**E. Prison Disciplinary Proceedings**

40. Defendant Castro issued a Rules Violation Report (RVR) charging Petitioner with fighting. The RVR was issued log number 6837992. On May 9, 2019, Plaintiff was found guilty of the charge at the disciplinary hearing. However, the findings were reversed on May 20, 2019 by Associate Warden T. Ellis who ordered the RVR dismissed in the interest of justice. Specifically, Ellis dismissed the RVR "due to lack of evidence".

41. Plaintiff is informed and believes that Hogg was charged and found guilty of fighting. He lost good time credits that were subsequently restored. Hogg was released on parole on or around September of 2019. Had Hogg been charged with battery causing serious bodily injury, he would have been subject to criminal prosecution and would not have regained credits.

Civil Rights Complaint
Pursuant to 42 U.S.C. § 1983

## IV.

## CAUSES OF ACTION

**A. First Cause of Action:** The Failure of Defendants Diaz, Kernan, Allison, Borders, and Houston to Protect Plaintiff from Assault

42. Plaintiff realleges and incorporates by reference paragraphs 1 through 41 of this complaint.

43. The acts and omissions of Defendants Diaz, Kernan, Allison, Borders, and Houston violate the Eighth Amendment of the United States Constitution. These defendants implemented policies and procedures that created an environment which posed a significant risk of danger to Plaintiff's health and safety.

44. For decades, it has been common knowledge amongst CDCR staff that sex offenders require separation from the general population because the nature of their offenses makes them targets for assault by other inmates. This is precisely one of the main reasons why CDCR implemented SNY facilities to provide protection from assault.

45. With this knowledge, the Defendants established NDPF policies which allow SNY inmates to be housed in a general population setting, including sex offenders like Plaintiff. As a direct and proximate result of these policies, Plaintiff was housed around inmate Hogg, who savagely beat him because of his commitment offense.

46. Given the patent knowledge of potential danger to Plaintiff, the Defendants are liable not only for compensatory (or presumed) damages, but also punitive damages, given that their conduct was recklessly indifferent to the threat of danger to Plaintiff's health and safety.

Civil Rights Complaint
Pursuant to 42 U.S.C. § 1983

B. **Second Cause of Action:** The Failure of Defendant Castro to Protect Plaintiff from Assault by Another Inmate

47. Plaintiff realleges and incorporates by reference paragraphs 1-41 of this complaint.

48. The acts and omissions of Defendant Castro violated the Eighth Amendment to the United States Constitution. Castro was aware of a direct threat to Plaintiff's health and safety but failed to take action to protect Plaintiff against that threat.

49. Castro was aware that: (a) Plaintiff is a convicted sex offender; (b) Plaintiff was designated SNY because of his convicted offenses; (c) inmate Hogg was not designated SNY; and (d) Hogg threatened bodily harm if Plaintiff did not move out of the cell.

50. With this knowledge, Castro refused to move Plaintiff out of the cell or take any other affirmative action to protect Plaintiff from assault by Hogg. As a direct and proximate result of Castro's deliberate inaction, Plaintiff suffered severe, lifelong injuries due to being brutally attacked by Hogg.

51. Given Castro's knowledge of a direct threat to Plaintiff and the deliberate failure to take affirmative action to protect Plaintiff, Castro is liable for compensatory (or presumed) damages. He is also liable for punitive damages his recklessly indifferent behavior.

///

///

///

## V.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

52. Pursuant to 42 U.S.C. § 1997e(a), Plaintiff exhausted all available administrative remedies before filing this action.

53. On July 2, 2019, Plaintiff submitted a CDCR 602 (Inmate/Parolee Appeal Form) alleging that Castro committed misconduct by failing to protect Plaintiff from assault by Hogg. The appeal was assigned log number CIM-C-19-02114. The appeal was denied at the third level on November 21, 2019, which exhausts administrative remedies on this claim.

54. On August 22, 2019, Plaintiff filed a second CDCR 602 alleging that the implementation of the NDPF by CDCR officials placed Plaintiff at great risk of assault by Hogg. The appeal was assigned log number CIM-A-19-02657. The appeal was denied at the third level on January 8, 2020, which exhausts administrative remedies on Plaintiff's claims against the named Defendants.

///
///
///

## VI.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment granting the following relief:

1. Declare that the acts and omissions of the named Defendants violate the Eighth Amendment to the United States Constitution.

2. A jury trial on all triable issues.

3. Appoint counsel to represent Plaintiff.

4. Nominal damages against each Defendant.

5. Compensatory or presumed damages in the amount of $2,750,000.

6. Punitive damages in the amount of $7,500,000.

7. Any further relief deemed to be appropriate.

DATED: January 17, 2020                    Respectfully Submitted:

_____
Gleiston Porcinode Andrade
PLAINTIFF PROCEEDING IN PROPRIA PERSONA

Civil Rights Complaint
Pursuant to 42 U.S.C. § 1983

## VERIFICATION

I, GLEISTON PORCINODE ANDRADE, am the plaintiff in the above-entitled action. I have read the foregoing COMPLAINT FOR DECLARATORY RELIEF, AN INJUNCTION, AND DAMAGES FOR VIOLATION OF CIVIL RIGHTS and am familiar with its contents. The same is true of my personal knowledge, except for those matters alleged therein on information and belief, and as to those matters, I believe them to be true. I declare under penalty of perjury that the foregoing is true and correct. Executed on January 17, 2020, at Chino, California.

_____
GLEISTON PORCINODE ANDRADE